HONORABLE ROBERT S. LASNIK

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                             AT SEATTLE

10    GLOBAL DNS LLC,

11                    Plaintiff,                    Case No.:  C08-00268 RSL

12            v.                                    DECLARATION OF JONAH
                                                   HARRISON IN SUPPORT OF
13    KOOK'S CUSTOM HEADERS, INC.,                  DEFENDANT KOOK'S CUSTOM
                                                   HEADERS, INC.'S MOTION TO
14                    Defendant.                    DISMISS THE COMPLAINT

15

16        I, Jonah O. Harrison, am over the age of 18, have personal knowledge of all the facts stated

17    herein and declare as follows:

18        1.  I am an attorney with Stokes Lawrence, P.S., attorneys for Defendant Kook's Custom

19    Headers, Inc. ("Kook's Custom Headers").

20        2.  Attached hereto as Exhibit 1 are true and correct copies of screenshots of the contents posted

21    to the website appearing at the kooks.com domain name on February 13, 2008.

22
23        3.  Attached hereto as Exhibit 2 are true and correct copies of screenshots showing the

24    "Sponsored Links" that appeared at the website at the kooks.com domain name after a visitor clicks

25    on the "Kooks Headers" link appearing on the landing page of the kooks.com website.

26

27

DECLARATION OF JONAH HARRISON IN SUPPORT OF DEFENDANT
KOOK'S CUSTOM HEADERS, INC.'S MOTION TO DISMISS THE
COMPLAINT - C08-00268 RSL                                    **STOKES LAWRENCE, P.S.**
                                                            800 FIFTH AVENUE, SUITE 4000
47194-001 \ 352061.doc                    -1-              SEATTLE, WASHINGTON 98104-3179
                                                                  (206) 626-6000

1    4.   Attached hereto as Exhibit 3 is a true and correct copy of the February 14, 2008 WIPO

2  Complaint filed by Kooks Custom Headers in *Kooks Custom Headers, Inc. v. Global DNS, LLC,*

3  Case No. D2008-0233.

4    5.   Attached hereto as Exhibit 4 are true and correct copies of screenshots of the contents posted

5

6  to the website appearing at the kooks.com domain name on July 15, 2008.

7    6.   Attached hereto as Exhibit 5 is a true and correct copy of Plaintiff Global DNS's March 18,

8  2008 Response to Kook's Custom Headers' WIPO Complaint filed in *Kooks Custom Headers, Inc.*

9  *v. Global DNS, LLC,* Case No. D2008-0233.

10    7.   Attached hereto as Exhibit 6 is a true and correct copy of the March 18, 2008 Declaration of

11  Brian Cartmell filed in *Kooks Custom Headers, Inc. v. Global DNS, LLC,* Case No. D2008-0233 in

12

13  support of Global DNS's Response to the WIPO complaint.

14    8.   Attached hereto as Exhibit 7 is a true and correct copy of the April 4, 2008 WIPO decision

15  in *Kooks Custom Headers, Inc. v. Global DNS, LLC,* Case No. D2008-0233.

16    9.   Attached hereto as Exhibit 8 is a true and correct copy of the Covenant Not to Sue provided

17  to Global DNS from Kooks Custom Headers.

18    I declare under penalty of perjury under the laws of the United States of America that the

19  foregoing is true and correct.

20    EXECUTED at Seattle, Washington this ___ day of August, 2008.

21

22          Jonah Harrison

23

24

25

26

27

DECLARATION OF JONAH HARRISON IN SUPPORT OF DEFENDANT
KOOK'S CUSTOM HEADERS, INC.'S MOTION TO DISMISS THE
COMPLAINT - C08-00268 RSL

47194-001 \ 352061.doc           -2-

STOKES LAWRENCE, P.S.
800 FIFTH AVENUE, SUITE 4000
SEATTLE, WASHINGTON 98104-3179
(206) 626-6000

# EXHIBIT 1

Case 2:08-cv-00268-RSL    Document 22    Filed 08/07/08    Page 4 of 74

Get a Telephone Report



# Kooks.com

*What you need, when you need it*

English



Make this your homepage | Bookmark this page
February 13, 2008 | Inquire about this domain

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ Kooks Headers Tones | ☒ Christian Singles | ☒ The Kooks | ☒ Russian Brides | ☒ Ringtones | ☒ Free Music Downloads | Ring |

- Kooks Headers
- Christian Singles
- The Kooks
- Russian Brides
- Ringtones
- Free Music Downloads
- Ring Tones
- Kooks
- Free Music
- The Kooks Lyrics

## Popular Categories

- Kooks Headers
- The Kooks
- Free Music Downloads
- Free Music
- Brass Soap Dispenser
- Msnbc

- Christian Singles
- Ringtones
- Kooks
- Download Full Movie
- Cheap Mp3 Player
- X

- Russian Brides
- Ring Tones
- The Kooks Lyrics
- Houses For Sale
- Grape Jelly Meatball
- Employment

## Favorite Categories

**Travel**
» Airline tickets
» Hotels
» Car rental
» Flights
» South Beach Hotels

**Finance**
» Free credit report
» Online Payment
» Credit Card Application
» Car Insurance
» Health insurance

**Home**
» Foreclosures
» Houses For Sale
» Mortgage
» People Search
» Real Estate Training

**Business**
» Employment
» Work from home
» Reorder Checks
» Used Cars
» Business Opportunities

**Entertainment**
» Games
» Casino
» Music
» Cell Phones
» Ringtones

**Lifestyle**
» Dating
» Christian Singles
» Jewish Singles
» Engagement Rings
» Chat

Search    [Search]

# EXHIBIT 2



*Search results for:*
**kooks headers**
*What you need, when you need it*

English 

☒ Airline Tickets   ☒ Employment   ☒ Car Insurance   ☒ Ringtones   ☒ Dating   ☒ Houses For Sale   ☒ Mortgage

| Airline Tickets |
| Employment |
| Car Insurance |
| Ringtones |
| Dating |
| Houses For Sale |
| Mortgage |
| Hotels |
| Work From Home |
| Free Credit Report |

## Sponsored Links

**Headers**
In Stock! Fast 1-2 day delivery Guaranteed lower prices
JEGS.com

**Headers**
Low Prices on Car & Truck **Headers**! Hedman, Pacesetter, Gibson, Borla.
www.autopartswarehouse.com

**1997-2008 Corvette Parts**
Corvette Parts & Accessories Chrome Wheel C5 C6 Z06 Free Catalog
www.EastCoastVette.com

**Headers**
We Offer 10,000+ Automotive Parts. Deals on **Headers**!
Shopzilla.com/AutomotiveProducts

**Headers - Car Stuff**
Untouchable **header** deals! Check out our Match Or Beat policy.
www.Car-Stuff.com

**NitroPlate Header Coating**
Buy Headman, Hooker, Dynatech Chrome Dial Board Brackets
www.NitroPlate.com

## Top Sites

**Headers**
Use LowPriceShopper for all your shopping needs!
http://LowPriceShopper.com

**Find kooks headers**
Shop and compare great deals on kooks headers and other related products at Mons
http://www.MonsterMarketplace.com

**Get Instant Ringtones**
Instantly get 1000s of Ringtones If you have Text Messaging.
http://www.GetRingtones.com

**Shop for headers**
Millions of Products from Thousands of Stores All in One Place.
www.Shopping.com

**Headers at Shopping.com!**
Find, compare and buy Sports Equipment and other Sports and Outdoors products at
http://www.Shopping.com

**headers: DealTime**
Save Time and Money Everytime You Shop.
www.DealTime.com

## WebSearch Results

**Kook's Custom Headers**

http://searchportal.information.com/?epl=01870094R1UMXGYWVIEFDVBXAFFeBlgHXwBFVFMUDU...    2/13/2008

Makers of a high quality tubular header for many applications. Established in 1962, we have a reputation for making the highe...
http://kookscustomheaders.com/

**lies.com**
December 17, 2003 Abstinance Makes People Dorks (aparently) My buddy Mark put it best when he sent me this link... Is this th...
http://www.lies.com/

Kooks Headers     Search

# EXHIBIT 3

# COMPLAINT TRANSMITTAL COVERSHEET

Attached is a Complaint that has been filed against you with the World Intellectual Property Organization (**WIPO**) Arbitration and Mediation Center (the **Center**) pursuant to the Uniform Domain Name Dispute Resolution Policy (the **Policy**) approved by the Internet Corporation for Assigned Names and Numbers (**ICANN**) on October 24, 1999, the Rules for Uniform Domain Name Dispute Resolution Policy (the **Rules**), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the **Supplemental Rules**).

The Policy is incorporated by reference into your Registration Agreement with the Registrar(s) of your domain name(s), in accordance with which you are required to submit to a mandatory administrative proceeding in the event that a third party (a **Complainant**) submits a complaint to a dispute resolution service provider, such as the Center, concerning a domain name that you have registered.  You will find the name and contact details of the Complainant, as well as the domain name(s) that is/are the subject of the Complaint, in the document that accompanies this Coversheet.

You have no duty to act at this time.  Once the Center has checked the Complaint to determine that it satisfies the formal requirements of the Policy, the Rules and the Supplemental Rules, it will forward an official copy of the Complaint to you.  You will then have 20 calendar days within which to submit a Response to the Complaint in accordance with the Rules and Supplemental Rules to the Center and the Complainant.  You may represent yourself or seek the assistance of legal counsel to represent you in the administrative proceeding.

The **Policy** can be found at http://www.icann.org/udrp/udrp-policy-24oct99.htm.

The **Rules** can be found at http://www.icann.org/udrp/udrp-rules-24oct99.htm.

The **Supplemental Rules**, as well as other information concerning the resolution of domain name disputes, can be found at http://www.wipo.int/amc/en/domains.

A **model Response** can be found at http://www.wipo.int/amc/en/domains/filing/udrp/.

Alternatively, you may contact the Center to obtain any of the above documents.  The Center can be contacted in Geneva, Switzerland by telephone at +41 22 338 8247, by fax at +41 22 740 3700 or by e-mail at domain.disputes@wipo.int.

You are kindly requested to contact the Center to provide the contact details to which you would like (a) the official version of the Complaint and (b) other communications in the administrative proceeding to be sent.

A copy of this Complaint has also been sent to the Registrar(s) with which the domain name(s) that is/are the subject of the Complaint is/are registered.

By submitting this Complaint to the Center the Complainant hereby agrees to abide and be bound by the provisions of the Policy, Rules and Supplemental Rules.

*Before the:*

## WORLD INTELLECTUAL PROPERTY ORGANIZATION
## ARBITRATION AND MEDIATION CENTER

*KOOKS CUSTOM HEADERS, INC.*
200 Candlewood Rd
Bayshore, NY 11706

**(Complainant)**

-v-

*GLOBAL DNS, LLC*
7683 SE 27th Street
PMB 273
Mercer Island, WA 98040

**(Respondent)**

**Disputed Domain Name:**

*www.kooks.com*

## COMPLAINT
(Rules, para. 3(b))

### I. Introduction

[1.] This Complaint is hereby submitted for decision in accordance with the Uniform
Domain Name Dispute Resolution Policy (the **Policy**), approved by the Internet
Corporation for Assigned Names and Numbers (**ICANN**) on October 24, 1999, the
Rules for Uniform Domain Name Dispute Resolution Policy (the **Rules**), approved by
ICANN on October 24, 1999 and the WIPO Supplemental Rules for Uniform Domain
Name Dispute Resolution Policy (the **Supplemental Rules**).

## II. The Parties

### A. The Complainant
(Rules, para. 3(b)(ii) and (iii))

[2.]   The Complainant in this administrative proceeding is Kooks Custom Headers, Inc. ("Kooks Custom Headers"), a domestic business corporation incorporated in 1996 under the laws of the State of New York. Complainant's principal place of business is at 200 Candlewood Rd., Bayshore, NY 11706. Complainant Kooks Custom Headers is involved in manufacturing, installing, and distributing custom headers and exhaust systems for automobiles and motorcycles.

[3.]   Complainant's contact details are as follows:

|  |  |
|---|---|
| Name: | Kooks Custom Headers, Inc. |
| Address: | 200 Candlewood Rd. |
|  | Bayshore, NY 11706 |
| Telephone: | (866) 586-5665 |
| Fax: | (631) 586-8287 |
| E-mail: | JR@KooksCustomHeaders.com |

[4.]   Complainant's authorized representative in this administrative proceeding is:

Edward M. Weisz

Cohen Pontani Lieberman & Pavane LLP

551 Fifth Avenue, Suite 1210

New York, NY 10011

Tel: (212) 687-2770

Fax: (212) 972-5487

[5.]   Complainant's preferred method of communications directed to the Complainant in this administrative proceeding is:

14

Electronic-only material

Method:    e-mail

Address:   eweisz@cplplaw.com; docket@cplplaw.com

Contact:   Edward M. Weisz

Material including hardcopy

Method:    Fax

Address:   Cohen Pontani Lieberman & Pavane LLP

               551 Fifth Avenue, Suite 1210

               New York, NY 10011

Fax:       (212) 972-5487

Contact:   Edward M. Weisz

**B.  The Respondent**
(Rules, para. 3(b)(v))

[6.]  According to the concerned registrar's Whois database, the Respondent in this administrative proceeding is Global DNS, LLC.  The Whois database identifies Master, Domain as the administrative and technical contact.  The legal status of Global DNS, LLC is unknown.  The Whois database provides a single address for the registrant, administrative contact, and technical contact: 7683 SE 27th Street, PMB 273, Mercer Island, WA 98040.  Copies of the printouts of the Whois database searches conducted on February 7, 2008 are provided as Annex 1.

[7.]  All information known to Complainant regarding the manner of contacting Respondent is as follows:

According to the Whois database, Respondent Global DNS, LLC is located at:

7683 SE 27th Street

PMB 273

Mercer Island, WA 98040

15                                              3

According to the Whois database, both the administrative contact and the technical

contact for the domain www.kooks.com is:

Master, Domain

7683 SE 27th Street

PMB 273

Mercer Island, WA 98040

Telephone: +1 206 374 2763

Email: domainmaster@globaldns.com

### III.  The Domain Name and Registrar
(Rules, para. 3(b)(vi) and (vii))

[8.]   This dispute concerns the domain name identified below:

www.kooks.com

[9.]   The registrar with which the domain name is registered is:

Tucows, Inc.

96 Mowat Avenue

Toronto, Ontario M6K 3M1

CANADA

### IV.   Jurisdictional Basis for the Administrative Proceeding
(Rules, paras. 3(a), 3(b)(xv))

[10.]  This dispute is properly within the scope of the Policy and the Administrative Panel has
jurisdiction to decide the dispute.  The registration agreement, pursuant to which the
domain name that is the subject of this Complaint is registered, incorporates the Policy.
According to Whois, the domain name was created through Tucows, Inc. on April 10,
1996.  The provision of the registration agreement that makes the Policy applicable to
the domain name www.kooks.com is section 31(a)(i), entitled "Submission to UDRP",
of the Tucows Registration Agreement, which was printed on February 7, 2008, and is
attached as Annex 2.  A true and correct copy of the domain name dispute policies that

apply to the domain name in question, which was printed on February 7, 2008, are provided as Annex 3 to this Complaint.

## V.   Factual and Legal Grounds
(Policy, paras. 4(a), (b), (c); Rules, para. 3)

[11.] This Complaint is based on the following grounds:

**A.   The domain name is identical or confusingly similar to a trademark or service mark in which the Complainant has rights;**

(Policy, para. 4(a)(i), Rules, paras. 3(b)(viii), (b)(ix)(1))

- The Complaint is based on the trademark KOOKS, which Complainant first used in commerce on or about January 1, 1962 and has continued to use in interstate commerce to this date without interruption. (See Kryssing Declaration[1], ¶ 2). The KOOKS mark is used to identify Complainant's custom headers and exhaust systems. (*Id.* at ¶ 3). Attached hereto as Annex 4 is a true and correct copy of a website printout of the KOOKS mark as currently used in connection with Complainant's custom headers and exhaust systems, which was printed on February 13, 2008. Complainant's KOOKS custom headers and exhaust systems are sold in the United States and worldwide. (*Id.* at ¶ 4). The KOOKS custom headers and exhaust systems have generated revenues of more than $15.5 million since 1999 and substantially more from when they were first introduced to the market in 1962. (*Id.* at ¶ 5).

The mark KOOKS identifies and distinguishes the exclusive source or origin of Complainant Kooks Custom Headers' goods - i.e. custom headers and exhaust systems - from those manufactured or sold by others. Complainant has registered the domain name including the KOOKS mark, for example www.kookscustomheaders.com for use in connection with providing Complainant's custom headers and exhaust systems and services to Internet users.

KOOKS is a registered trademark in the United States Patent and Trademark Office (Registration No. 2475925) with a registration date of August 7, 2001. A printout

of the particulars of its registration from the www.uspto.gov website, which was printed on February 8, 2008, is attached hereto as Annex 5. Complainant's trademark registration for KOOKS acts as *prima facie* evidence of its validity and inherent distinctiveness. *See Janus Int'l Holding Co. v. Rademacher*, D2002-0201 (WIPO Mar. 5, 2002) ("Panel decisions have held that registration of a mark is *prima facie* evidence of validity, which creates a rebuttable presumption that the mark is inherently distinctive.").

- The domain name www.kooks.com is identical or confusingly similar to Complainant's registered trademark because it wholly incorporates the word KOOKS, the exact mark in which Complainant has rights.
- The phrase "Kooks", Respondent's top-level identifier, and Respondent's domain name, www.kooks.com, include no other distinguishing words, numerals, or other characters either preceding or following "KOOKS" in its domain name.
- A reasonable person may believe that www.kooks.com is linked to the Complainant.

**B.**  **Respondent has no rights or legitimate interests in respect of the domain name;**
(Policy, para. 4(a)(ii), Rules, para. 3(b)(ix)(2))

- According to the Whois database, the domain name www.kooks.com was registered on April 10, 1996 - more than thirty years after Complainant first commenced *bona fide* commercial use of its KOOKS trademark.
- There is no evidence that Respondent is using the domain name in connection with a bona fide offering of goods or services. Rather, Respondent is using the contested domain name to post links to third party websites presumably for the commercial benefit of receiving click-through fees. Such diversion is neither a *bona fide* offering of goods or services under Policy ¶4(c)(i) nor a legitimate noncommercial or fair use under Policy ¶4(c)(iii). *See, e.g., WeddingChannel.com Inc. v. Vasiliev*, FA 156716 (Nat. Arb. Forum June 12, 2003) (finding that a respondent's use of a disputed domain name to redirect Internet users to websites unrelated to a Complainant's mark, websites where the respondent presumably receives a referral fee for each misdirected user, is not a *bona fide* offering of goods or services). A

---

[1] The Declaration of George Kryssing Sr. is submitted in support of the Complaint.

screen shot of the webpage accessed at www.kooks.com as of February 13, 2008, is attached hereto as Annex 6.

- One of the various links on www.kooks.com is entitled "Kooks Headers." However, said title does not link to Complainant's website. Rather, upon clicking said title, the user is transferred to yet another search portal that is entitled "Kooks Headers" with links to, *inter alia*, more third party websites – many of which are competitors of Complainant Kooks Customer Headers. A screen shot of the webpage accessed after clicking "Kooks Headers" on www.kooks.com as of February 13, 2008, is attached hereto as Annex 7.

- There is no evidence that Respondent as an individual, business, or other organization has been commonly known by the domain name. Where a respondent is not commonly known by the mark, panels have found no rights or legitimate interests in the domain name. *See Compagnie de Saint Gobain v. Com-Union Corp.*, D2000-0020 (WIPO Mar. 14, 2000) (finding no rights or legitimate interests where the respondent was not commonly known by the mark and never applied for a license or permission from the complainant to use the mark).

**C.**   **The domain name was registered and is being used in bad faith.**
(Policy, paras. 4(a)(iii), 4(b); Rules, para. 3(b)(ix)(3))

- Respondent presumably receives click-through fees for the website links displayed on the domain name www.kooks.com. Indeed, after clicking on any of the categories listed on www.kooks.com, the user is transferred to a search portal with "sponsored links." Such commercial benefit constitutes bad faith registration and use under Policy ¶4(b)(iv). *See, e.g., LTD Commodities, LLC v. Domain Drop S.A.*, FA 0609000809759 (Nat. Arb. Forum Nov. 13, 2006) (when panel infers that respondent receives click-through fees, such benefit constitutes bad faith registration).

- Respondent's disputed domain name creates confusion as to Complainant's possible sponsorship or an affiliation with not only www.kooks.com, but also third party websites, which is further evidence of bad faith registration and use. *See, e.g., Veolia Environment v. Domain Drop S.A.*, D2006-1029 (Oct. 30, 2006) (finding bad

faith where domain name confuses the consumer with the possibility that there is a connection between the domain name and Complainant's business).

- Respondent misdirects, distracts, and delays potential consumers from their pursuit of products and services being offered by Complainant. A potential customer who seeks Kooks Custom Headers will likely visit www.kooks.com.

- A potential customer who visits www.kooks.com may click the link for "Kooks Headers" on www.kooks.com, in hopes of ultimately reaching Kooks Custom Headers. However, the user would be misdirected yet again and transferred to a search portal entitled "Kooks Headers" with links to, *inter alia*, competitors of Kooks Custom Headers. The negative impact of the domain name to the Complainant's business is a further indication of bad faith. *Id.*

## VI. Remedies Requested
(Rules, para. 3(b)(x))

[12.] In accordance with Paragraph 4(i) of the Policy, for the reasons described in Section V above, Complainant requests that the Administrative Panel appointed in this administrative proceeding issue its decision that the domain name www.kooks.com be transferred to Complainant.

## VII. Administrative Panel
(Rules, para. 3(b)(iv))

[13.] Complainant elects to have the dispute decided by a single panelist.

## VIII. Mutual Jurisdiction
(Rules, para. 3(b)(xiii))

[14.] In accordance with Paragraph 3(b)(xiii) of the Rules, Complainant will submit, with respect to any challenges that may be made by Respondent to a decision by the Administrative Panel to transfer or cancel the domain name that is the subject of this Complaint, to the jurisdiction of the courts at the location of the domain name holder's address, as shown for the registration of the domain name(s) in the concerned registrar's Whois database at the time of the submission of the Complaint to the Center.

## IX.  Other Legal Proceedings
(Rules, para. 3(b)(xi))

[15.] No other legal proceedings are applicable.

## X.  Communications
(Rules, paras. 2(b), 3(b)(xii); Supplemental Rules, paras. 3, 4)

[16.] A copy of this Complaint, including annexes with supporting declaration together with the cover sheet as prescribed by the Supplemental Rules, has been sent or transmitted to Respondent on February 14, 2008, in accordance with section 2(a) of the Rules,

(i)     via U.S. Express Mail to Global DNS, LLC at the following postal-mail address:

7683 SE 27th Street

PMB 273

Mercer Island, WA 98040; and

(ii)    in electronic form (including annexes to the extent available in that form) to the following e-mail addresses:

domainmaster@globaldns.com (technical and administrative contact)

postmaster@globaldns.com

[17.] A copy of this Complaint, including annexes and supporting declaration, has been sent to the concerned registrar, Tucows Inc., on February 14, 2008, by First Class U.S. Postal Service to:

Tucows, Inc.

96 Mowat Avenue

Toronto, Ontario M6K 3M1

CANADA

[18.] This Complaint, including annexes and supporting declaration, is submitted to the Center in electronic form to domain.disputes@wipo.int, and in four (4) sets together with the original via Federal Express.

## XI.  **Payment**
(Rules, para. 19; Supplemental Rules, Annex D)

[19.]  As required by the Rules and Supplemental Rules, payment in the amount of USD
$1,500 has been made by check to:

Beneficiary: World Intellectual Property Organization (WIPO)
Arbitration and Mediation Center
34, chemin des Colombettes
1211 Geneva 20
Switzerland

## XII.  **Certification**
(Rules, para. 3(b)(xiv))

[20.]  Complainant agrees that its claims and remedies concerning the registration of the
domain name, the dispute, or the dispute's resolution shall be solely against the domain
name holder and waives all such claims and remedies against (a) the WIPO Arbitration
and Mediation Center and Panelists, except in the case of deliberate wrongdoing, (b)
the concerned registrar, (c) the registry administrator, and (d) the Internet Corporation
for Assigned Names and Numbers, as well as their directors, officers, employees, and
agents.

[21.]  Complainant certifies that the information contained in this Complaint is to the best of
Complainant's knowledge complete and accurate, that this Complaint is not being
presented for any improper purpose, such as to harass, and that the assertions in this
Complaint are warranted under the Rules and under applicable law, as it now exists or
as it may be extended by a good-faith and reasonable argument.

Respectfully submitted,

Date: February 14, 2008

Edward M. Weisz

# EXHIBIT 4

# DON'T FORGET TO BILL YOUR CLIENT!

## GLOBAL DNS LLC vs. KOOKS CUSTOM HEADERS, INC

## <u>UPDATE: GLOBAL DNS WINS UDRP!</u>

### *STOP REVERSE DOMAIN HIJACKING BY MAKING IT EXPENSIVE!*



KOOKS.COM

1. *AN ECCENTRIC, STRANGE, OR FOOLISH PERSON.*
2. *AN INSANE PERSON.*

**QUESTIONS & ANSWERS** ☺ SHARE ▦ ⚙ ☀

**Where can I find the latest information about the Federal Lawsuit and UDRP Action?**

See <u>UDRP Docket</u> and the <u>Lawsuit Docket</u> for the latest information.

**UPDATE:**

**Now that you've won the UDRP case, what is the status of the federal lawsuit you filed for cancellation of the Kooks Customs Headers Trademark?**

We are continuing with our move to cancel the Kooks Custom Headers trademark.

**But why continue with a lawsuit? What are your monetary damages in this instance?**

This case is not solely about monetary damages; instead, we are intent on showing that the trademark for Kooks Custom Headers is invalid, thereby rendering moot any further actions on their part to exploit the UDRP process as a cheap means of wresting coveted domain names away from their lawful domain holders. Once the people behind Kooks Custom Headers embarked upon the path of claiming trademark protection as a means for grabbing domain names, they opened their trademark to scrutiny. We are confident their trademark claims cannot withstand such scrutiny.

**How far will you go?**

We will proceed until all legal options have been exhausted.

**Would you settle this lawsuit?**

Of course. We are familiar with the expensive and uncertain nature of any legal proceeding, and we are not unreasonable people, but the terms of any settlement agreement will be public and not subject to confidentiality clauses.

**What is Reverse Domain Hijacking?**
Reverse domain hijacking is the practice of unseating valid and legally registered domain name holders/registrants by accusing them of violating weak and/or non-existent trademarks related to the domain name. (see Wikipedia)

**Why did you register the KOOKS.COM domain, and didn't you agree to the UDRP?**
The domain was registered April 10th, 1996 to be used for a future internet venture. The ideas for this venture have changed over the years, but have included a Wiki type system of Kooks on the Internet (which the defendant of our lawsuit would fit nicely within) (see 1993 alt.usenet.kooks Post). Back in 1996, there was no such thing as UDRP, so we would have been hard pressed to agree to it.

**You're not doing anything with the KOOKS.COM domain -- it was just pointed to a parking page, so why not just give it to them?**
Over the years, we have developed many of our registered/purchased domains into real businesses. Some of these domains we had for over 10 years before landing on a plan for how to best utilize its name and traffic. We have had plans for Kooks.com from day one, and will eventually develop a website around the domain in the future. The domain is obviously valuable enough for Kooks Custom Headers to attempt to Hijack, but we're not the sort to just give away our valuable property willy-nilly.

**Why not agree to the outcome of ICANN UDRP Process?**
Trademark owners have used the procedure in certain cases to obtain ownership of domains they don't rightfully deserve, and the UDRP has a history of ruling in favor of the Trademark holder 80% of the time or more, no matter how weak or specious the trademark argument. (see UDRP Complaint)

**Can you really file a lawsuit to prevent your domain from being Hijacked?**
In the United States, the Anticybersquatting Consumer Protection Act (ACPA) 15 U.S.C. 15 U.S.C. § 1114(2)(D)(v) [15]permits the domain name holder the exclusive remedy to bring a civil action when their domain has been suspended, disabled, or transferred as a result of an ICANN proceeding, in order to establish that their use of the domain is not unlawful. The court is authorized under the statute to grant injunctive relief to the registrant, including reactivation or transfer of the domain to the registrant . . . so the answer is yes.

**Isn't a lawsuit far more expensive than the UDRP Process?**
Yes. UDRP complaints are cheap to file and easy to defend. As we previously stated, history shows that in 80% or more of the cases, the UDRP Arbitrator sides with the Trademark holder against the domain registrant, rightfully or not -- so if you can afford legal action to prevent your domain name from being Hijacked, it's the best course.

**Is this a Joke? You didn't really file a lawsuit, did you? People say they will file a lawsuit all the time, and then don't.**
You're right. A lot of people blow smoke when talking about attorneys and lawsuits, but we don't. You can download a copy of the legal action. (see Complaint)

**Have you been in Trademark related disputes before?**
Yes. Hormel filed an action to cancel the trademark of Spam Arrest, a related company. Hormel incorrectly assumed that they owned the word SPAM in all its permutations, yet after a four year battle, Hormel lost its trademark dispute while spending millions of dollars in legal proceedings. (see USPTO TTAB)

**Kooks Custom Headers claims you had a link for "Kooks Headers" listed on the parking page, and people were confused. Isn't that a bad thing to do?**
First, we had never heard of Kooks Custom Headers, and we had no knowledge of this link;



How to reduce Spam:

Hire Spam Ninjas

spamarrest
30-day FREE TRIAL!

second, no one from their company or legal team ever bothered to contact us to alert us that there might be confusion in order to allow us the opportunity to remedy the alleged situation; third, we would have blocked the terms "headers" and "custom headers" from appearing on the parking page had they simply asked; and finally, KOOKS is the plural form of the word KOOK, which is a generic, commonly used word in the English language that has nothing to do with mufflers or car parts. (see Dictionary)

## Kooks Custom Headers has a Trademark for KOOKS. Doesn't that entitle them to your domain?
No, it doesn't. Yes, they have a US Trademark for KOOKS, but only in regards to automotive and motorcycle parts -- namely, exhaust headers and mufflers. Their trademark provides them certain protection in those areas only, much as Hormel's trademark provided them with protection when it came to canned or potted meat, but not an email spam blocking company. (see USPTO)

## You say the KOOKS trademark application by Kooks Custom Headers was fraudulent -- how is that?

In their trademark application, they claim a "First Use" date of 1962 -- thirty two years before their company came into existence. Since Kooks Custom Headers was incorporated in 1996, and therefore did not exist prior to 1996, Kooks Custom Headers cannot assert trademark rights dating back to 1962; therefore, Global DNS has filed a lawsuit to cancel the Kooks Custom Headers Trademark as fraudulent.

## Kooks Custom Headers claims you registered eight hundred domains within the last few years, and that you've registered other trademarked domains, such as ICANN-BRIEF.ORG, ICANN-PAPERS.COM, ICANNBRIEF.COM, ICANNBRIEF.ORG, and ICANNNEWS.COM, all of which show demonstrable bad faith.

Global DNS has not registered anything close to eight hundred domains in the last few years, nor do we own the trademarked ICANN domains they claim we own (Global DNS owns absolutely no ICANN domains, nor have we ever owned any ICANN domains). Kooks Custom Headers has again perpetrated a fraud (this would appear to be a pattern) by presenting "evidence" with no merit or backing in the hopes that their false information will prejudice the WIPO board against us, as ICANN is the body that created the UDRP Process and is a federally registered trademark of the same group.

## Kooks Custom Headers claims that since you filed a lawsuit the very same day you were served with the UDRP complaint, this would suggest that Glboal DNS has been down this path before and is hoping to coerce Kooks Custom Headers to negotiate a high purchase of KOOKS.COM domain. They also claim that you essentially admitted as much by saying that you want to make it "expensive" for them to try and take your domain away.

Kooks Custom Headers has made many false statements -- either because of incompetent counsel or malicious intent, we have no way of knowing, but what we do know is that we have no interest in selling our domain to them, not now and not ever. The fact that we have quick and competent counsel that filed a lawsuit against Kooks on the same day that we were informed of Kooks' attempt to hijack our domain means only that we take this UDRP action seriously. We jealously guard our intellectual property, and absolutely refuse to make it cheap and easy for Kooks Custom Headers to hijack our domain. (see UDRP Complaint)

## Kooks Custom Headers recently won a UDRP claim for the domain KOOKSHEADERS.COM. Doesn't that give them a clear entitlement to the KOOKS.COM domain?

No. While we agree that there is a likelihood of confusion in regards to KOOKSHEADERS.COM

and the business of Kooks Custom Headers, the generic word "kooks" causes no confusion whatsoever, and Kooks Custom Headers is not entitled to our domain simply because they find it a desirable Internet property.

**Who are you, and why are you so passionate about Intellectual Property?**
The Managing Director of Global DNS is Brian Cartmell, who has had years of experience with Trademark holders who assert that they have specific rights where they most certainly do not. He and his companies have spent millions of dollars successfully defending themselves against unjustified lawsuits. We believe this is unfair and unwarranted. GlobalDNS wants other Domain Holders who rightfully own their domains to know that they can fight domain hijackers, and win!

**What do you want the final outcome of this legal action to be?**
First, we would like to see their UDRP complaint purged, as we have done nothing wrong by owning the Kooks.com domain and we are in no mood for a UDRP complaint record that might suggest otherwise; secondly, we would like to see them pay for the legal costs accrued as a result of our being forced to deal with this underhanded action; and finally, we would like a formal apology from George Kryssing Sr. who brought forward this UDRP complaint in an effort to hijack a valuable domain name that is not rightfully his. The Kooks.com domain is legally and rightfully ours -- we have been in possession of this domain since well before Mr. Kryssing even registered his own trademark, and the word "kooks" itself, in all its crazy glory, is not any one person's or one company's intellectual property. We intend to keep it that way.

SHARE

**Subscribe to our Newsletter for Updates on the Lawsuit**

EMAIL ADDRESS

Subscribe

Powered By - Zookoda

**©2008 GLOBAL DNS LLC**

# EXHIBIT 5

*Before the:*

## WORLD INTELLECTUAL PROPERTY ORGANIZATION
## ARBITRATION AND MEDIATION CENTER

Kooks Custom Headers, Inc.
200 Candlewood Road
Bayshore, NY 11706

**(Complainant)**

-v-

Global DNS LLC
7683 SE 27th Street
PMB 273
Mercer Island, WA 98040

**(Respondent)**

Case No:  D2008-0233

**Disputed Domain Name:**

*kooks.com*

---

### RESPONSE
(Rules, para. 5(b))

### I.  Introduction

1.   On February 28, 2008, the Respondent received a Notification of Complaint and
     Commencement of Administrative Proceeding from the WIPO Arbitration and
     Mediation Center (the **Center**) by e-mail informing the Respondent that an
     administrative proceeding had been commenced by the Complainant in
     accordance with the Uniform Domain Name Dispute Resolution Policy (the
     **Policy**), approved by the Internet Corporation for Assigned Names and Numbers
     (**ICANN**) on October 24, 1999, the Rules for Uniform Domain Name Dispute
     Resolution Policy (the **Rules**), approved by ICANN on October 24, 1999, and
     the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution
     Policy (the **Supplemental Rules**).  The Center set March 19, 2008 as the last
     day for the submission of a Response by the Respondent.

## II. Respondent's Contact Details
(Rules, para. 5(b)(ii) and (iii))

2.    The Respondent's contact details are:

    Name:      Global DNS LLC
    Address:   7683 SE 27th Street
               PMB 273
               Mercer Island, WA 98040

    Telephone: (206) 374-2763
    Fax:       (206) 374-2763
    E-mail:    domainmaster@globaldns.com

3.    The Respondent's authorized representative in this administrative proceeding is:

    Name:      Derek A. Newman
    Address:   Newman & Newman, Attorneys at Law, LLP
               505 Fifth Avenue South, Suite 610
               Seattle, WA 98104

    Telephone: (206) 274-2800
    Fax:       (206) 274-2801
    E-mail:    trademarks@newmanlaw.com

4.    The Respondent's preferred method of communications directed to the
Respondent in this administrative proceeding is:

    Electronic-only material
    Method:    e-mail
    Address:   trademarks@newmanlaw.com
    Contact:   Derek A. Newman

    Material including hardcopy
    Method:    fax
    Fax:       (206) 274-2801
    Contact:   Derek A. Newman

2

30

### III. Response to Statements and Allegations Made in Complaint
(Policy, paras. 4(a), (b), (c); Rules, para. 5)

5.   The Respondent hereby responds to the statements and allegations in the Complaint and respectfully requests the Administrative Panel to deny the remedies requested by the Complainant.

### a.   Statement of Facts

#### i. Respondent's Business

Respondent is a Washington limited liability company. (Annex 1.)  Respondent's business activities include the registration of domain names for later use in connection with Internet businesses.  (Annex 2.)  One example of a successful business developed in connection with a domain name originally registered by Respondent is Spam Arrest, LLC (spamarrest.com), which provides a popular service for the elimination of unsolicited commercial email.  (*Id.*)  Another example is MyPW LLC (mypw.com), which provides the service of electronic authentication of user identity via the Internet.  (*Id.*)  Yet another example is Global DNS's WebBackup service for online data backup (webbackup.com).  (*Id.*)

Respondent's manager, Brian Cartmell, founded and developed eNic Corporation ("eNic"), which managed the registry for <.cc> domain names and which Mr. Cartmell sold to Verisign, Inc. in 2001 for tens of millions of dollars.  (Annex 2.)  In his capacity as the Chairman and CEO of eNic, Mr. Cartmell testified before the Subcommittee on Telecommunications of the United States Senate Commerce Committee regarding the governance of the domain name system by the Internet Corporation for Assigned Names and Numbers ("ICANN").  (*Id.*)

Respondent registered <kooks.com> (the "Domain Name") in good faith in 1996 for possible later use in connection with an Internet venture.  (Annexes 2 and 3.)  In the twelve (12) years since it registered the Domain Name, Respondent has considered a number of potential uses for <kooks.com> including but not limited to the discussion of eccentric, strange, or foolish people, commonly known as "kooks".  (Annex 2.)

While Respondent was considering potential uses for the Domain Name, it linked the Domain Name to a "parking page" which offered links to content from search providers such as Google and Yahoo.  (Annex 2.)  Until recently, the entire content of

3

Respondent's website linked to the Domain Name (the "Website") was auto-generated by these search providers. (*Id.*) Before Complainant initiated this UDRP proceeding, it was Respondent's common practice to link its domain names to parking pages while they were reserved for future development. (*Id.*) To the knowledge of Respondent's manager, none of Respondent's domain names have been confusingly similar to any trademark owned by another party. (*Id.*)

At the time it registered the Domain Name, Respondent was unaware of Complainant's existence, let alone its alleged trademark KOOKS (the "Alleged Mark"). (Annex 2.) Respondent has never offered to sell, rent, or otherwise transfer the Domain Name to Complainant or any other party. (*Id.*) Even though Respondent has received several offers to purchase the Domain Name, it has never responded to any of those offers. (*Id.*) Respondent has never had any intent to sell the Domain Name or trade on Complainant's alleged goodwill associated with the Alleged Mark. (*Id.*) There have been no adverse decisions against Respondent in the past under either the UDRP or the Anti-Cybersquatting Consumer Protection Act ("ACPA"). (*Id.*)

Respondent has never intended to disrupt Complainant's business, nor has it ever intentionally attempted to create a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of its Website or of any product or service on its Website. (Annex 2.)

Until it received the complaint in this UDRP proceeding in February, 2008, Respondent had never been accused of cybersquatting. (Annex 2.) Respondent has not engaged in any bad faith conduct -- to the contrary, Respondent has exercised good faith by removing all links between parking pages and websites under Respondent's control, including the Website linked to the Domain Name. (*Id.*)

Although Respondent registered the Domain Name in 1996, Complainant waited twelve years before filing the complaint in the above-captioned proceeding. (Annex 2.) Complainant registered the domain name <kookscustomheaders.com> in 1998. (Annex 4.) Presumably Complainant attempted to register the Domain Name <kooks.com> ten years ago, but learned at that time that Respondent had registered the Domain Name. Still, Complainant did nothing for at least ten years.

Prior to receiving the complaint in this proceeding, Respondent was unaware that any content relating to "kooks headers" had allegedly appeared on its website. (Annex 2.)

4

Had Complainant contacted Respondent prior to initiating the above-captioned proceeding, Respondent would have blocked the terms "headers" and "custom headers" from appearing on the Website associated with the Domain Name. (*Id.*)

ii.     **Complainant's Alleged Mark**

"Kooks" is the plural of "kook", a generic term which appears in dictionaries. (Annexes 5 and 6.) The word refers to "one whose ideas are eccentric, fantastic, or insane". (*Id.*) There is simply no basis for Complainants to claim exclusive rights in the word "kooks".

Complainant is a New York corporation which was formed in March 1996, only one month before Respondent registered the Domain Name. (Annex 7.) Although Complainant did not exist prior to March 1996, Complainant falsely indicated to the U.S. Patent and Trademark Office that its use of the Alleged Mark KOOKS began in 1962, thirty-two (32) years before it came into existence. (Annex 8.) Since Complainant was incorporated in 1996, and therefore did not exist prior to 1996, Complainant cannot assert trademark rights dating back to 1962. Accordingly, Respondent has filed a federal lawsuit seeking cancellation of Complainant's U.S. federal trademark registration for the Alleged Mark, which was based on Complainant's fraudulent misrepresentations. (Annex 9.)

In any event, since Complainant's alleged trademark rights cannot predate 1996, and Respondent registered the domain name <kooks.com> that same year, Respondent cannot have registered the domain name in bad faith. There is no basis for alleging that Respondent should have known of the existence of a corporation which had only existed for one month at the time Respondent registered the Domain Name. Complainant has not provided any evidence indicating that it is the successor-in-interest of an alleged prior user of the Alleged Mark. Nor has it provided any evidence to indicate why Respondent, which is located near Seattle, Washington, should have known of the Alleged Mark's use by an entity located far away from Respondent, in New York State.

Further, Complainant's testimony lacks credibility because Complainant has made numerous factual misrepresentations in this WIPO proceeding. For example, in its Opposition to Request for Suspension of Proceedings ("Opposition"), Complainant alleges Respondent is the registrant of <icann-brief.org>, <icann-papers.com>,

5

<icannbrief.com>, <icannbrief.org>, and <icannnews.com>.  In truth, Respondent is not the registrant of any of these domain names.  (See Exhibits 2 through 6 to Cartmell Declaration, Annex 2.)  Indeed, Respondent is not the registrant of <u>most</u> of the domain names attached as Exhibit 2 to Complainant's Opposition, despite Complainant's contrary assertions.

### b.   Argument

Complainant cannot meet any of the three elements needed to prevail in a UDRP dispute.  It has no exclusive rights in the Alleged Mark, which is a generic term, and it obtained its trademark registration by fraud.  Respondent has legitimate rights and interests in the Domain Name.  Moreover, Respondent did not register and is not using the Domain Name in bad faith.  Accordingly, Complainant's requested relief should be denied.

#### i.   Complainant Has No Rights to Exclude Others from Using the Generic Term "Kooks"

##### (a)   Complainant Obtained Its Trademark Registration By Fraud

Complainant cannot prevail unless the Domain Name is "identical or confusingly similar to a trademark or service mark in which the complainant has rights".  ICANN Policy ¶ 4(a)(i).  In this case, the Complainant has no legitimate trademark rights in the Alleged Mark. Complainant obtained its U.S. trademark registration by fraud.  Its federal trademark application for the Alleged Mark indicated Complainant's first use of the Alleged Mark occurred on January 1, 1962.  However, Complainant was not incorporated until 1996, thirty-four (34) years after its claimed first use of the Alleged Mark.  Complainant has not provided any evidence to indicate it is a legitimate successor-in-interest to another entity which began using the Alleged Mark prior to Complainant's existence.  Since Complainant's U.S. trademark registration is based on fraudulent misrepresentations, that registration is subject to cancellation pursuant to 15 U.S.C. § 1064(3).

The evidence submitted in this proceeding indicates Complainant was formed in March 1996 (Annex 7), and Respondent registered the Domain Name in April 1996 (Annex 3).  Therefore, when Respondent registered the Domain Name, Complainant had been in existence only for several weeks.  It strains credibility to claim that Respondent, which is based near Seattle, should have known about Complainant

(based thousands of miles away, in New York) mere weeks after Complainant's formation.

Further, Complainant did not even file a trademark application until October 2000, over four years after Respondent registered the Domain Name, and did not obtain a trademark registration until August 2001. (Annex 8.) Complainant registered the domain name <kookscustomheaders.com> in 1998, so it presumably knew of Respondent's Domain Name registration at that time. (Annex 4.) Nevertheless, Complainant waited another ten years before initiating this UDRP proceeding. Complainant's extreme delay in initiating this proceeding, which it filed <u>twelve years</u> after Respondent's Domain Name registration, is another factor indicating Complainant's lack of credibility.

Complainant's fraudulent misrepresentations are not limited to its U.S. trademark application. Complainant's submissions to this Panel also misrepresent the facts. Complainant alleges Respondent is the registrant of <icann-brief.org>, <icann-papers.com>, <icannbrief.com>, <icannbrief.org>, and <icannnews.com>. In truth, Respondent is not the registrant of any of these domain names. (See Exhibits 2 through 6 to Cartmell Declaration, Annex 2.) Respondent respectfully requests that the Center take Complainant's repeated misstatements into account when weighing the parties' credibility.

The evidence suggests Complainant had no enforceable trademark rights in 1996, when Respondent registered the Domain Name. This case is similar to *Valve Corp. v. ValveNET, Inc.*, D2005-0038 (WIPO Mar. 9, 2005):

> "This Panel is not persuaded by the totality of the circumstances in this case that the Respondent's primary motive for the registration of the disputed domain name was cybersquatting. When the Respondent registered the disputed domain name <valve.com> on August 18, 1995, the Complainant clearly had not established any rights in its VALVE mark. In fact, the Complainant would not even come into corporate existence until more than a year after the registration... And while the VALVE mark may be distinctive in relation to the Complainant's computer software and game programs, it nonetheless is a common English word frequently used in its generic sense..."

### (b)     The Word "Kooks" Is Generic

"Kooks" appears in dictionaries, and is commonly used generic term. Even when an alleged trademark and a domain name "are all but identical... the first person or entity to register the domain name should prevail in circumstances... where the domain name

is a generic word." *CRS Tech. Corp. v. CondeNet, Inc.*, FA 93547 (Nat. Arb. Forum Mar. 28, 2000); *see also Zero Int'l Holding GmbH & Co. Kommanditgesellschaft v. Beyonet Services*, D2000-0161 (WIPO May 15, 2000) (common words may be legitimately registered as domain names on a "first come, first served" basis); *Rollerblade, Inc. v. CBNO*, D2000-0427 (WIPO Aug. 24, 2000) ("genericness... will defeat a claim of trademark rights, even in a mark which is the subject of an incontestable registration"); *Michael Leslie Jones a/k/a Mick Jones v. Stephen Gregory*, FA 125747 (Nat. Arb. Forum Jan. 14, 2003) ("...Complainant does not hold exclusive rights in FOREIGNER. He does have exclusive rights in relation to the uses for which he has registered trademarks, but the word FOREIGNER itself is a common English word").

When a complainant claims rights in a generic term, it must submit evidence sufficient to establish "either fame or strong secondary meaning in the mark"; without such evidence, its claim fails. *Kaleidoscope Imaging, Inc. v. V Entertainment*, FA 203207 (Nat. Arb. Forum Jan. 5, 2004). Complainant has not provided any evidence to show its Alleged Mark had acquired the "secondary meaning" necessary for consumers to associate that mark with Complainant and its services as of 1996, when Respondent registered the Domain Name. "The hurdles for showing that a generic term like 'voyeur' has acquired secondary meaning are high." *Virtual Dates, Inc. v. Xedoc Holding SA*, FA 433802 (Nat. Arb. Forum Apr. 27, 2005).

Evidence of secondary meaning includes "length and amount of sales under the mark, the nature and extent of advertising, consumer surveys and media recognition"; moreover, this evidence must establish Complainant's common law rights "prior to Respondent's registration of the disputed domain name." *Candy Direct, Inc. v. itsalldirect2u.com*, FA 514784 (Nat. Arb. Forum Aug. 22, 2005). Complainant failed to present any evidence to establish secondary meaning as of the 1996 date of registration. Consequently, Complainant cannot establish it had exclusive rights in the Alleged Mark when Respondent registered the Domain Name. Nor can it provide a credible reason for this Panel to conclude that Respondent should have known of Complainant's existence, let alone its alleged trademark use, in 1996.

## ii. Respondent Has The Right to Use the Domain Name Which Is the Subject of the Complaint

Complainant must also show the Respondent has "no rights or legitimate interests in respect of the domain name". ICANN Policy ¶ 4(a)(ii). It cannot do this, because

Respondent uses its domain names to develop Internet-based businesses in good faith. Moreover, Respondent did not know Complainant existed when it registered the Domain Name, nor did it know Complainant claimed the exclusive right to use the word "kooks".

(a)    **Respondent Was Not Aware Complainant Existed When It Registered the Domain Name**

Complainant has not proven Respondent "knew about or should have known about the Complainant at the time of registration"; accordingly, Respondent's use of the Domain Name is bona fide, and Respondent has a right or legitimate interest in the Domain Name, particularly since "kooks" is a generic dictionary word. *Seaway Bolt & Specials Corp. v. Digital Income Inc.*, FA 114672 (Nat. Arb. Forum Aug. 5, 2002).

When a Complainant fails to show that Respondent "knew or should have known" of its trademark rights "at the time of registration of the domain name", then the panel cannot find that Respondent registered the domain name in bad faith as required by ICANN Policy ¶ 4(a)(iii). *Allocation Network GmbH v. Gregory*, D2000-0016 (WIPO Mar. 24, 2000). Complainant cannot make the required showing in this case. *See Alberto-Culver Co. v. Pritpal Singh Channa*, D2002-0757 (WIPO Oct. 7, 2002):

> "I reject the idea that some sort of 'constructive notice' is generated upon a trademark registration, and that this is sufficient to establish bad faith. To accept this idea is to accept that a trademark registration—without anything further—is enough to establish bad faith under the Policy. This is a ludicrous suggestion, and runs contrary to the clear intention of paragraph 4.a.(iii) which was intended to protect the interests of domain name holders who registered without bad faith... There is nothing to indicate that the Respondent was ever aware of the mark... the mark and the domain names here are the concatenation of two generic English words."

In *Alberto-Culver*, unlike this case, the complainant had trademark registrations which predated the registration of the domain name. Consequently, this case is closer to *Barlow Lyde & Gilbert v. The Business Law Group*, D2005-0493 (June 24, 2005):

> "At the time Respondent registered the disputed domain name (in 1996), Complainant had not registered its service mark... Had Respondent done a global trademark search in 1996, it would not have found a registration for Complainant's BLG mark either in United Kingdom of Great Britain and Northern Ireland or the United States of America. There is no basis for determining that Respondent should have been on constructive notice of Complainant's mark at the time it registered the disputed domain name."

9

Similarly, in this case there is no basis for concluding Respondent "knew or should have known" Complainant had any trademark rights when it registered the Domain Name, and Complainant's claim fails.

Further, the term "kooks" is generic, and is used by many parties other than Complainant.  No reasonable person could assume that, when Respondent registered the Domain Name, it should have known the Complainant would claim the exclusive right to use domain names including variants of the word "kooks".  *See Energy Source Inc. v. Your Energy Source*, FA 96364 (Nat. Arb. Forum Feb. 19, 2001) (finding Respondent had rights and legitimate interests in the domain name when "Respondent has persuasively shown that the domain name is comprised of generic and/or descriptive terms, and, in any event, is not exclusively associated with Complainant's business").

(b)    **Respondent Develops Internet-Based Businesses in Good Faith**

Respondent has a long history of developing Internet-based businesses in good faith, such as its popular Spam Arrest service for the elimination of unsolicited commercial email and its MyPW service for authenticating user identity via the Internet. Respondent acquired the Domain Name, <kooks.com>, for future business development at a time when it did not know Complainant existed or that Complainant pretended to have exclusive rights in the generic word "kooks."

Moreover, Respondent's actions with respect to Complainant also indicate good faith. Respondent's principal has testified in his declaration (Annex 2) that prior to receiving the complaint in this proceeding, Respondent was unaware that any content relating to "kooks headers" had allegedly appeared on its website.  Until that time, there was no reason why Respondent should have known about Complainant or its Alleged Mark. Nevertheless, as an act of good faith, Respondent immediately removed all links between parking pages and websites under Respondent's control, including the Website linked to the Domain Name.  (Annex 2.)

Even if Respondent had knowingly provided links to information connected with the term "kooks headers", which it did not, Respondent would still have acted in good faith.  *See Target Brands, Inc. v. Eastwind Group*, FA 267475 (Nat. Arb. Forum Jul. 9, 2004) (website providing links auto-generated by Overture.com is a legitimate business interest); *HP Hood LLC v. hood.com*, FA 313566 (Nat. Arb. Forum Nov. 9, 2004) ("Where the domain name incorporates a common word, it is likely to be found

10

that the posting of related advertising links constitute use of the domain name for the bona fide offering of goods and services"); *Miller Brewing Company v. Hong*, FA 192732 (Nat. Arb. Forum Dec. 8, 2003) (registration of a generic term for use in a search engine portal is "legitimate", and "there is nothing wrong with using the generic phrase... in order to provide advertisers with connected customer traffic"). Respondent's actions, unlike Complainant's, indicate its consistent good faith.

iii.   **Respondent Did Not Register The Domain Name in Bad Faith, and Is Using It in Good Faith**

Complainant cannot show the Respondent's Domain Name "was registered and is being used in bad faith", as required by ICANN Policy ¶ 4(a)(iii). Accordingly, Complainant's claim fails. *See Canned Foods Inc. v. Ult. Search Inc.*, FA 96320 (Nat. Arb. Forum Feb. 13, 2001)(where the domain name is a generic term, it is difficult to conclude the respondent meant to cause confusion).

Even if Complainant had trademark rights when Respondent registered the Domain Name (and it had no such rights), there would still be no bad faith registration. Respondent's principal has "submitted a sworn affidavit asserting that he had no knowledge of Complainant or its trademark at the time he registered the Domain Name". *Dreamgirls, Inc. v. Dreamgirls Entertainment*, D2006-0609 (Aug. 10, 2006). As in *Dreamgirls*, Respondent's testimony is credible given that "Complainant[] did not file its trademark application until... years after Respondent registered the Domain Name, and that Complainant has not offered any evidence that Respondent was aware of Complainant's trademark at the time it registered the Domain Name".

ICANN Policy ¶ 4(b) provides four factors indicating bad faith, none of which apply to Respondent.

(a)   **Respondent Has Never Sold, Rented, or Transferred the Domain Name**

ICANN Policy ¶ 4(b)(i) applies when "circumstances indicat[e] that [Respondent has] registered or... acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration". In this case, Respondent has turned down several offers to purchase the Domain Name and has never sold, rented, or transferred it.

11

    (b)    **Respondent Has Not Prevented Complainant from Reflecting Its Mark in a Corresponding Domain Name**

ICANN Policy ¶ 4(b)(ii) applies when the respondent has a pattern of "register[ing]... domain name[s] in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name". Respondent has no such pattern in this case. Further, Complainant has long been the registrant of <kookscustomheaders.com>, a domain name which reflects its Alleged Mark.

    (c)    **Respondent Did Not Register the Domain Name to Disrupt Complainant's Business**

ICANN Policy ¶ 4(b)(iii) applies when a party registers a domain name "primarily for disrupting the business of a competitor." Respondent's principal has testified that Respondent had no knowledge of Complainant or its Alleged Mark as the time it registered the Domain Name. Therefore, Respondent could not have registered the Domain Name for the purpose of disrupting Complainant's business. Further, Complainant's twelve-year delay between Respondent's Domain Name registration and the initiation of this UDRP proceeding, indicates the Domain Name registration did not disrupt Complainant's business.

    (d)    **Consumers Are Not Likely to Be Confused by Respondent's Domain Name Use**

ICANN Policy ¶ 4(b)(iv) applies when a party has "intentionally attempted to attract" consumers to its website "by creating a likelihood of confusion with the complainant's mark". Complainant argues Respondent is exploiting its goodwill by using a domain name confusingly similar to Complainant's Alleged Mark. This assumes consumers associate the word "kooks" with Complainant, but there is no evidence that they do. Even accepting Complainant's fraudulent trademark registration at face value (which is improper), and even assuming the registration grants Complainant the exclusive right to use a generic term (which it does not), Complainant did not have a trademark registration when Respondent registered the Domain Name. Moreover, Complainant had only existed for one month when the Domain Name was registered. There is simply no evidence to indicate Respondent registered the Domain Name in bad faith, which is an absolute prerequisite for transferring a domain name pursuant to the UDRP. *See Guildline Instruments Ltd. v. Anderson,* D2006-0157 (Apr. 12, 2006).

The evidence overwhelmingly favors Respondent, but even if this were a close case, the Panel should decide in Respondent's favor. *See Chivas USA Enterprises, LLC v. Carbajal*, D2006-0551 (June 30, 2006):

> "The Policy was not designed to be used as broadside Internet trademark protection. Rather it was designed as an expedited means to redress only "abusive, bad faith cyber squatting." As Complainants bear the burden of proof, "[i]n a close case, the panel should lean toward the Respondents' view of things." *eCrush.com, Inc. v. Cox, Davis & Simpsom, LLC, Mr. Ken Cox, Mr. Brian Simpson, Mr. Ron Davis*, WIPO Case No. D2004-0552 (citing *Interstate National Dealer Services, Inc. v. Selwyn Colley*, WIPO Case No. D2003-0934; *Rug Doctor, L.P. v. Barry Bourdage*, WIPO Case No. DTV2003-0002."

The Complainant has failed to meet the required evidentiary burden in this case, and its Complaint should be denied.

## IV.  Administrative Panel
(Rules, paras. 5(b)(iv) and (b)(v) and para. 6; Supplemental Rules, para. 7)

6.    The Respondent elects to have the dispute decided by a single-member Administrative Panel.

## V.  Other Legal Proceedings
(Rules, para. 5(b)(vi))

7.    On February 14, 2008, Respondent commenced the following lawsuit in connection with <kooks.com>, the domain name that is the subject of the Complaint in this proceeding: *Global DNS LLC v. Kook's Custom Headers, Inc.*, U.S.D.C. W.D.Wash. Case No. 2:08-CV-00268-RSL (the "Lawsuit").  The Lawsuit is an action for declaratory relief to establish that Respondent's registration of the domain name <kooks.com> is lawful under the U.S. Lanham Trademark Act and the Anticybersquatting Consumer Protection Act and does not violate Complainant's rights thereunder.  In the Lawsuit, Respondent also argues Complainant's alleged trademark KOOKS should be cancelled because, upon information and belief, Complainant committed fraud upon the United States Patent and Trademark Office.

13

## VI. **Communications**
(Rules, paras. 2(b), 5(b)(vii); Supplemental Rules, para. 3)

8.    A copy of this Response has been sent or transmitted to the Complainant on
      March 18, 2008 by email to eweisz@cplplaw.com and docket@cplplaw.com
      and by fax to (212) 972-5487 (Contact: Edward M. Weisz), as specified in
      Paragraph 5 of the Complainant's Complaint and the Rules, para. 2(b).

9.    This Response is submitted to the Center in electronic form (except to the extent
      not available for annexes), and in four (4) sets together with the original.

## VII. **Certification**
(Rules, para. 5(b)(viii), Supplemental Rules, para. 12)

10.   The Respondent agrees that, except in respect of deliberate wrongdoing, the
      Administrative Panel, the World Intellectual Property Organization and the
      Center shall not be liable for any act or omission in connection with the
      administrative proceeding.

11.   The Respondent certifies that the information contained in this Response is to
      the best of the Respondent's knowledge complete and accurate, that this
      Response is not being presented for any improper purpose, such as to harass, and
      that the assertions in this Response are warranted under the Rules and under
      applicable law, as it now exists or as it may be extended by a good-faith and
      reasonable argument.

Respectfully submitted,

Derek A. Newman
Newman & Newman, Attorneys at Law, LLP
505 Fifth Avenue South, Suite 610
Seattle, WA 98104

Attorneys for Respondent Global DNS LLC

Date: March 18, 2008

14

*Before the:*

## WORLD INTELLECTUAL PROPERTY ORGANIZATION
## ARBITRATION AND MEDIATION CENTER

| | |
|---|---|
| Kooks Custom Headers, Inc.<br>200 Candlewood Road<br>Bayshore, NY 11706 | **Case No:** D2008-0233 |
| **(Complainant)** | |
| -v- | **Disputed Domain Name:** |
| Global DNS LLC<br>7683 SE 27th Street<br>PMB 273<br>Mercer Island, WA 98040 | *kooks.com* |
| **(Respondent)** | |

## TABLE OF ANNEXES

**Annex 1**     Washington Secretary of State records regarding Global DNS LLC

**Annex 2**     Declaration of Brian Cartmell

**Annex 3**     WHOIS record for <kooks.com>

**Annex 4**     WHOIS record for <kookscustomheaders.com>

**Annex 5**     Merriam-Webster Dictionary definition of "kook"

**Annex 6**     Dictionary.com definition of "kook"

**Annex 7**     New York Secretary of State records regarding Kook's Custom Headers, Inc.

**Annex 8**     U.S. trademark registration for KOOKS

**Annex 9**     Complaint in Global DNS LLC v. Kook's Custom Headers, Inc., U.S.D.C. W.D.Wash. Case No. 2:08-CV-00268-RSL

# EXHIBIT 6

*Before the:*

## WORLD INTELLECTUAL PROPERTY ORGANIZATION
## ARBITRATION AND MEDIATION CENTER

Kooks Custom Headers, Inc.
200 Candlewood Road
Bayshore, NY 11706

**(Complainant)**

-v-

Global DNS LLC
7683 SE 27th Street
PMB 273
Mercer Island, WA 98040

**(Respondent)**

**Case No:** D2008-0233

**Disputed Domain Name:**

*kooks.com*

## DECLARATION OF BRIAN CARTMELL

I, Brian Cartmell, declare and testify as follows:

1. I am over eighteen (18) years of age, competent to testify to the matters stated in this declaration, and make this declaration from personal knowledge of those matters.

2. I am the managing member of Global DNS LLC ("Respondent"), and as such, I am familiar with Respondent's business and affairs.

3. In addition to managing Respondent, I am active and have been active in a number of other legitimate business ventures. Those ventures have included the founding and development of eNic Corporation ("eNic"), which managed the registry for <.cc> domain names and which I sold to Verisign, Inc. in 2001 for tens of millions of dollars. In my capacity as the Chairman and CEO of eNic, I testified before the Subcommittee on Telecommunications of the United States Senate Commerce Committee regarding the governance of the domain name system by the Internet Corporation for Assigned Names and Numbers

("ICANN"). Attached as Exhibit 1 hereto is a true and correct copy of my
testimony before that Senate subcommittee.

4.   Respondent's business activities include the registration of domain names for
later use in connection with Internet businesses. One example of a successful
business developed in connection with a domain name originally registered by
Respondent is Spam Arrest, LLC (spamarrest.com), which provides a popular
service for the elimination of unsolicited commercial email. Another example is
MyPW LLC (mypw.com), which provides the service of electronic
authentication of user identity via the Internet. Yet another example is Global
DNS's WebBackup service for online data backup (webbackup.com).

5.   Respondent registered <kooks.com> (the "Domain Name") in good faith in 1996
for possible later use in connection with an Internet venture. In the twelve (12)
years since it registered the Domain Name, Respondent has considered a number
of potential uses for <kooks.com> including but not limited to the discussion of
eccentric, strange, or foolish people, commonly known as "kooks".

6.   While Respondent was considering potential uses for the Domain Name, it
linked the Domain Name to a "parking page" which offered links to content
from search providers such as Google and Yahoo. Until recently, the entire
content of Respondent's website linked to the Domain Name (the "Website")
was auto-generated by these search providers. Before Complainant initiated this
UDRP proceeding, it was Respondent's common practice to link its domain
names to parking pages while they were reserved for future development. To
my knowledge, none of Respondent's domain names have been confusingly
similar to any trademark owned by another party.

7.   At the time it registered the Domain Name, Respondent was unaware of
Complainants' existence, let alone its alleged trademark KOOKS (the "Alleged
Mark"). Respondent has never offered to sell, rent, or otherwise transfer the
Domain Name to Complainant or any other party. Even though Respondent has
received several offers to purchase the Domain Name, it has ever responded to
any of those offers. Respondent has never had any intent to sell the Domain
Name or trade on Complainant's alleged goodwill associated with the Alleged
Mark. There have been no adverse decisions against Respondent in the past

2

under either the UDRP or the Anti-Cybersquatting Consumer Protection Act ("ACPA").

8.  Respondent has never intended to disrupt Complainant's business, nor has it ever intentionally attempted to create a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of its Website or of any product or service on its Website.

9.  Until it received the complaint in this UDRP proceeding in February, 2008, Respondent had never been accused of cybersquatting. Respondent has not engaged in any bad faith conduct -- to the contrary, Respondent has exercised good faith by removing all links between parking pages and websites under Respondent's control, including the Website linked to the Domain Name.

10. Although Respondent registered the Domain Name in 1996, Complainant waited twelve years before filing the complaint in the above-captioned proceeding.

11. Prior to receiving the complaint in this proceeding, Respondent was unaware that any content relating to "kooks headers" had allegedly appeared on its website. Had Complainant contacted Respondent prior to initiating the above-captioned proceeding, Respondent would have blocked the terms "headers" and "custom headers" from appearing on the Website associated with the Domain Name.

12. Complainant's testimony lacks credibility for several reasons. Among them is the fact that Complainant has made numerous factual misrepresentations in this WIPO proceeding. For example, in its Opposition to Request for Suspension of Proceedings ("Opposition"), Complainant alleges Respondent is the registrant of <icann-brief.org>, <icann-papers.com>, <icannbrief.com>, <icannbrief.org>, and <icannnews.com>. In truth, Respondent is not the registrant of any of these domain names. Attached as Exhibits 2 through 6 hereto are true and correct copies of the WHOIS records for those five domain names. (The organization "Planck CV", which includes the terms "Global" and "DNS Services" in its WHOIS records, is unrelated to Respondent.) In truth, Respondent is not the registrant of most of the domain names attached as Exhibit 2 to Complainant's Opposition, despite Complainant's contrary assertions.

3

I certify and declare under the penalty of perjury under the laws of the United States that to my knowledge the foregoing is true and correct.

Brian Cartmell

Dated: March 18, 2008

4

*Before the:*

## WORLD INTELLECTUAL PROPERTY ORGANIZATION
## ARBITRATION AND MEDIATION CENTER

| | |
|---|---|
| Kooks Custom Headers, Inc.<br>200 Candlewood Road<br>Bayshore, NY 11706 | Case No:  D2008-0233 |
| **(Complainant)** | |
| -v- | **Disputed Domain Name:** |
| Global DNS LLC<br>7683 SE 27th Street<br>PMB 273<br>Mercer Island, WA 98040 | *kooks.com* |
| **(Respondent)** | |

## TABLE OF EXHIBITS TO
## DECLARATION OF BRIAN CARTMELL

**Exhibit 1**   Brian Cartmell testimony before Subcommittee on Telecommunications of the United States Senate Commerce Committee

**Exhibit 2**   WHOIS record for icann-brief.org

**Exhibit 3**   WHOIS record for icann-papers.com

**Exhibit 4**   WHOIS record for icannbrief.com

**Exhibit 5**   WHOIS record for icannbrief.org

**Exhibit 6**   WHOIS record for icannnews.com

5

# EXHIBIT 7



**ORGANISATION MONDIALE**
**DE LA PROPRIÉTÉ INTELLECTUELLE**

Centre d'arbitrage et de médiation de l'OMPI

**WORLD INTELLECTUAL**
**PROPERTY ORGANIZATION**

WIPO Arbitration and Mediation Center

April 10, 2008

Re:  Case No.  D2008-0233
<kooks.com>
Notification of Decision

Please find attached the full text of the decision issued on April 4, 2008 by the Administrative Panel in the above-referenced case.

The Administrative Panel's finding is as follows:

*"For all the foregoing reasons, the Complaint is denied."*

Yours sincerely,

María Alejandra López
Case Manager

34, chemin des Colombettes, 1211 GENÈVE 20 (SUISSE) ✆ (41-22) 338 9111 Fax (41-22) 740 3700 e-mail: domain.disputes@wipo.int
Internet: http://www.arbiter.wipo.int    Banque: Crédit Suisse, Genève, compte OMPI N° 48 7080-81    Chèques postaux: OMPI N° 12-5000-8, Genève

## COMMUNICATIONS

This notification is being communicated to the Complainant in accordance with the following contact details:

    Kooks Custom Headers, Inc.
    200 Candlewood Rd.
    Bayshore, NY 11706
    United States of America

    Represented by:
    Edward M. Weisz
    Cohen, Pontani, Lieberman & Pavane
    551 Fifth Avenue, Suite 1210 New York, NY 10011
    United States of America
    12126872770 (Office telephone)
    12129725487 (Office FAX)
    eweisz@cplplaw.com
    docket@cplplaw.com
    MBoezi@cplplaw.com
    MHartoonian@cplplaw.com

By the following methods:
[ x ]  Post (with original enclosure)
[ x ]  E-mail (with attachment)


This notification is being communicated to the Respondent in accordance with the following contact details:

    Global DNS, LLC
    7683 SE 27th Street
    PMB 273
    Mercer Island, WA 98040
    United States of America

    Represented by:
    Derek Newman
    505 Fifth Avenue South, Suite 610, Seatle, WA 98104
    United States of America
    12062742800 (Office telephone)
    12062742801 (Office FAX)
    trademarks@newmanlaw.com
    derek@newmanlaw.com
    randy@newmanlaw.com
    sarah@NewmanDichter.com

By the following methods:
[ x ]  Post (with original enclosure)
[ x ]  E-mail (with attachment)

A copy has also been communicated to the Registrar listed below:

.Tucows

By the following method:
[ x ]   E-mail (with attachment)



# WIPO Arbitration and Mediation Center

### ADMINISTRATIVE PANEL DECISION

### Kooks Custom Headers, Inc. v. Global DNS, LLC

### Case No. D2008-0233

## 1.   The Parties

The Complainant is Kooks Custom Headers, Inc., Bayshore, New York,
United States of America, represented by Cohen, Pontani, Lieberman & Pavane LLP,
United States of America.

The Respondent is Global DNS, LLC, Mercer Island, Washington,
United States of America, represented by Newman & Newman LLP,
United States of America.

## 2.   The Domain Name and Registrar

The disputed Domain Name <kooks.com> is registered with Tucows Inc.

## 3.   Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center
(the "Center") on February 14, 2008.  On February 15, 2008, the Center transmitted by
email to the Registrar a request for registrar verification in connection with the Domain
Name.  On February 15, 2008, the Registrar transmitted by email to the Center its
verification response confirming that the Respondent is listed as the registrant and
providing the contact details.  The Center verified that the Complaint satisfied the
formal requirements of the Uniform Domain Name Dispute Resolution Policy
(the "Policy"), the Rules for Uniform Domain Name Dispute Resolution Policy
(the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute
Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified the
Respondent of the Complaint, and the proceedings commenced on February 28, 2008.
In accordance with the Rules, paragraph 5(a), the due date for Response was
March 19, 2008.  The Response was filed with the Center on March 19, 2008.

The Center appointed W. Scott Blackmer as the sole panelist in this matter on March 28, 2008. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

There have been additional submissions by both parties in this Proceeding. On February 21, 2008, the Respondent submitted a Request for Suspension of Proceedings, citing a lawsuit filed by the Respondent on February 14, 2008. The Complainant submitted an Opposition to this request on February 25, 2008. The Complainant also submitted a Supplemental Response on March 21, 2008.

## 4.    Factual Background

The Complainant is a New York corporation formed in 1996. Based in Bayshore, New York, the Complainant manufactures, installs, and distributes custom headers (high-performance exhaust manifolds) and other exhaust system parts for automobiles and motorcycles.

According to the declaration of the Complainant's president, Mr. Kryssing, the Complainant has used the KOOKS mark to identify its products since 1962. The parties agree that the Complainant was not incorporated until 1996, however, so Mr. Kryssing presumably refers to use of the mark by the Complainant and, before 1996, by the Complainant's predecessor or predecessors, which are not identified. Mr. Kryssing states that the Complainant has made more than US $15.5 million in sales associated with the KOOKS mark since 1999. He asserts that "substantially more" revenues have been generated since the brand was introduced in 1962, but he does not quantify such sales.

The Complainant operates a website at "www.kookscustomheaders.com". According to the registrar's WHOIS database, that domain name was created on October 1, 1998. From information published on the Complainant's website, it appears that the Complainant sells its products both directly and through authorized dealers in many locations in the United States of America, including two in the State of Washington, where the Respondent is located.

The Complainant holds a United States of America trademark registration for KOOKS, Registration No. 2475925. The trademark was registered on August 7, 2001, showing first use in commerce on January 1, 1962.

The Respondent is a Washington limited liability company. It registers domain names and typically points them to "parking" websites filled with third-party advertising links generated by an advertising search engine. In some instances, the Respondent develops websites associated with a domain name, such as "www.spamarrest.com" (an email spam-blocking service), "www.mypc.com" (online authentication of user identity), and "www.webbackup.com" (online data backup services).

The Respondent registered the Domain Name on April 10, 1996. According to the Declaration of the Respondent's managing member, Mr. Cartmell, the Respondent has until recently linked the Domain Name to a "parking page" that offered links to content provided by search providers such as Google and Yahoo!

The Complainant furnished a printout of the website associated with the Domain Name

on February 13, 2008. The landing page was headed, "Kooks.com, *What you need, when you need it*". The landing page featured links to third-party advertising under diverse categories of goods and services, including music downloads, employment, games, and even "Russian Brides". The landing page also provided a search capability.

The first listing in the left frame of the landing page associated with the Domain Name was "Kooks Headers", and the first listing under "Popular Categories" in the center of the landing page was also "Kooks Headers". Clicking on one of the "Kooks Headers" links generated a page listing "Sponsored Links". These included links to competitors of the Complainant such as JEGS, Auto Parts Warehouse, Car-Stuff.com, EastCoastVette, and Nitro-Plate offering "headers", "header coating", and related automotive products and services.

When notified of this UDRP proceeding in February 2008, the Respondent disassociated the Domain Name from the domain parking service and posted its own content on the website to which the Domain Name resolved. Apart from an advertisement for the Respondent's SpamArrest service, the website now consists of a single page discussing this UDRP proceeding, under the heading, "Stop Reverse Domain Hijacking by Making It Expensive!".

## 5.   Parties' Contentions

### A.   Complainant

The Complainant asserts that the Domain Name is identical to its registered KOOKS trademark and that the Respondent has demonstrated no rights or legitimate interests in using the mark in the Domain Name.

The Complainant observes that the Respondent appears to have derived pay-per-click advertising revenue from the use of the Domain Name in connection with a domain parking website, and that the advertising involved a variety of goods and services including those offered by the Complainant's direct competitors. The Complainant argues that the misdirection of Internet users for commercial gain reflects the Respondent's bad faith in the registration and use of the Domain Name.

### B.   Respondent

The Respondent challenges the validity of the KOOKS trademark registration. It argues that in any event the Respondent is entitled to register and use a domain name consisting of a dictionary word to develop a relevant website, and to park it with a third-party advertising service in the interim.

The Respondent denies prior knowledge of the Complainant or its KOOKS mark and also denies responsibility for the display of competitors' advertising links on the domain parking websites to which the Domain Name formerly resolved.

## 6.   Discussion and Findings

Paragraph 4(a) of the Policy provides that in order to divest a Respondent of a disputed domain name, a Complainant must demonstrate each of the following:

(i)      the Domain Name is identical or confusingly similar to a trademark or service

mark in which the Complainant has rights;  and

(ii)   the Respondent has no rights or legitimate interests in respect of the Domain Name;  and

(iii)  the Domain Name has been registered and is being used in bad faith.

Under paragraph 15(a) of the Rules,

"A Panel shall decide a complaint on the basis of the statements and documents submitted and in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

## A.   Supplemental Filings

The Rules do not explicitly provide for supplemental filings in a Policy proceeding, except at the request of the Panel (see Rules, paragraph 12).  Paragraph 10 of the Rules enjoins the Panel to conduct the proceeding "with due expedition" and empowers the Panel to "determine the admissibility, relevance, materiality and weight of the evidence".  Therefore, UDRP Panels are reluctant to countenance delay through additional rounds of pleading and typically accept supplemental filings only to consider new evidence or provide a fair opportunity to respond to new arguments.

Here, the Respondent filed a lawsuit and a request to suspend the UDRP proceeding, and also furnished new evidence about its domain registration, parking, and development business.  The Panel accepts these submissions for consideration, as well as the Complainant's opposition and supplemental filing in reply.

## B.   Request for Suspension Pending Judicial Proceedings

The Complaint in the present UDRP proceeding was filed on February 14, 2008, with email notice to the Respondent.  Before the day was over, the Respondent filed a "Complaint for Declaratory Relief of Non-Infringement and Lawful Use of the <Kooks.com> Domain Name, and for Cancellation of Trademark Registration" in the United States District Court for the Western District of Washington at Seattle (Case No. 2:08-00268-RSL).

The Respondent's federal court complaint seeks a judicial ruling that (a) the KOOKS trademark is neither "distinctive" nor "famous" for purposes of the Anticybersquatting Consumer Protection Act (ACPA), (b) the Respondent's use of the Domain Name does not violate the Lanham Act (federal trademark law), and (c) the registration of the KOOKS trademark should be cancelled.

The complaint is grounded on 15 U.S.C. § 1114(2)(D)(v), which provides as follows:

"A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter.  The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant."

The Policy establishes a mandatory administrative proceeding, but it expressly does not

preclude a Respondent from seeking judicial remedies either before or after the UDRP proceeding:

> "The mandatory administrative proceeding requirements set forth in Paragraph 4 shall not prevent either you or the complainant from submitting the dispute to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced or after such proceeding is concluded." (Policy, paragraph 4(k))

The present UDRP proceeding commenced on February 28, 2008, after the filing of the Respondent's lawsuit.

Paragraph 18(a) of the Rules gives the Panel discretion to suspend or terminate a UDRP proceeding where, as here, the Domain Name is the subject of other legal proceedings:

> (a) In the event of any legal proceedings initiated prior to or during an administrative proceeding in respect of a domain-name dispute that is the subject of the complaint, the Panel shall have the discretion to decide whether to suspend or terminate the administrative proceeding, or to proceed to a decision.

The Domain Name is clearly the subject of the Respondent's lawsuit, and the court in that proceeding may ultimately issue a ruling that grants or denies the Respondent's request for declaratory relief. However, the court may well decide that the request is premature, since 15 U.S.C. § 1114(2)(D)(v) contemplates an action *after* the disputed domain name has been "suspended, disabled, or transferred" under a mandatory dispute resolution policy such as the UDRP. In any event, litigation will entail costs and delays that might possibly be avoided by prompt resolution of the current UDRP proceeding.

In the circumstances of this proceeding, the Panel finds no compelling reason for suspending the UDRP administrative proceeding and therefore denies the Respondent's request.

## C.   Identical or Confusingly Similar

The Complainant holds a registered trademark for KOOKS, which is identical to the Domain Name for Policy purposes.

The Respondent argues in this proceeding, as it does in the federal lawsuit, that the trademark was improperly registered. The Respondent alleges that the registration was based on "fraudulent" representations by the Complainant in claiming use of the mark since 1962, when the Complainant was not incorporated until 1996. This argument overlooks the possibility that the Complainant is the assignee or successor in interest to the party or parties that used the KOOKS mark before April 1996. Such facts were presumably examined by the United States Patent and Trademark Office before registering the trademark, and the evidence is not before the Panel in this proceeding.

UDRP panels must often examine the sufficiency of claims to unregistered or unexamined marks as the basis for a UDRP complaint (see, e.g., discussion in *One Creative Place, LLC v. Kevin Scott*, WIPO Case No. D2006-0518). Where a complainant holds a registered, examined trademark, however, UDRP panels routinely defer to the trademark office. See WIPO Overview of WIPO Panel Views on Selected UDRP Questions, sec. 1.1.

The Respondent here has challenged the trademark registration in federal court, as it is

entitled to do, but the Panel accepts the federally registered trademark as satisfying the Policy requirement for "a trademark or service mark in which the Complainant has rights" (para. 4(a)(i)).

### D.   Rights or Legitimate Interests

The Policy, paragraph 4(c), provides a non-exhaustive list of circumstances in which a respondent could demonstrate rights or legitimate interests in a contested domain name:

(i)   before any notice to you of the dispute, your use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a *bona fide* offering of goods or services;  or

(ii)   you (as an individual, business, or other organization) have been commonly known by the domain name, even if you have acquired no trademark or service mark rights;  or

(iii)   you are making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue.

The Respondent does not claim to have been known by the Domain Name, and it acknowledges the commercial use of the Domain Name for advertising. Its argument for a legitimate interest in the Domain Name is that it is a dictionary word in English, signifying "an eccentric, strange, or foolish person" or "an insane person". The Respondent claims a right to use such a word for third-party advertising purposes, but the Respondent also claims that it selected the Domain Name for "future business development", "for possible later use in connection with an Internet venture". As Mr. Cartmell, the Respondent's managing member, explained in his Declaration:

> "In the twelve (12) years since it registered the Domain Name, Respondent has considered a number of potential uses for <kooks.com> including but not limited to the discussion of eccentric, strange, or foolish people, commonly known as 'kooks'."

Such a vague and unsupported statement of intentions does not amount to "demonstrable preparations" to use the Domain Name in connection with "a *bona fide* offering of goods or services", nor does it establish a legitimate noncommercial use of the Domain Name.

There are instances where a dictionary word or descriptive phrase may be used legitimately for its generic value, as described in *Philip Morris USA Inc. v. Prophet Partners Inc.*, WIPO Case No. D2007-1614:

> "In some circumstances, acquiring a domain name comprised of a dictionary or genuinely descriptive term for potential resale and using it for a parking website with pay-per-click, third-party advertising may be considered consistent with a legitimate offering of goods and services. See, e.g., *The Landmark Group v. DigiMedia.com, L.P.*, NAF No. 0285459 ('As long as the domain names have been registered because of their attraction as dictionary words, and not because of their value as trademarks, this is a business model that is permitted under the Policy'); *Weather Shield Mfg., Inc. v. Lori Phan*, WIPO Case No. D2007-1247 (resale and advertising may in some contexts represent legitimate interests, 'particularly where the Domain Name is a dictionary word and there is not

page 6

persuasive evidence that the Respondent was more likely than not aware of the Complainant's marks'). If, on the contrary, the Respondent chose the Domain Name in an effort to capitalize on the Complainant's famous trademark, this could not be considered a use in connection with a '*bona fide*' offering of goods or services."

The screen shot of the domain parking page formerly associated with the Domain Name does not display content about eccentric persons, consistent with the dictionary meaning of the word. To the contrary, it prominently features third-party advertising links labeled "Kooks Headers" that lead to advertisements from the Complainant's competitors. This use does not represent a legitimate interest in the Domain Name for its generic rather than trademark value.

The Respondent protests that these particular links were served up by a third-party search engine without its knowledge. But the Respondent contracted with the parking service, presumably shared in the pay-per-click advertising revenues, and took no steps (until this Complaint was filed) to remove such links from the website. Even if the Respondent did not choose the specific advertising keywords used by the domain parking search engine, as the registrant of the Domain Name the Respondent must bear some responsibility for the uses to which it is put. Paragraph 2 of the Policy, "Your Representations", is incorporated by reference in the registration agreements of ICANN-approved registrars:

> "By applying to register a domain name, or by asking us to maintain or renew a domain name registration, you hereby represent and warrant to us that . . . (b) to your knowledge, the registration of the domain name will not infringe upon or otherwise violate the rights of any third party; (c) you are not registering the domain name for an unlawful purpose; and (d) you will not knowingly use the domain name in violation of any applicable laws or regulations. It is your responsibility to determine whether your domain name registration infringes or violates someone else's rights."

The Respondent failed, over the course of twelve years, to use the Domain Name for what it characterizes as its intended purposes. The Respondent also apparently acquiesced to using the Domain Name for advertising that targeted the Complainant's mark, and presumably profited therefrom. These facts tend to support the Complainant's inference that the Respondent has no rights or legitimate interests in the Domain Name for purposes of the Policy, paragraph 4(a)(ii). However, given the Panel's conclusions on bad faith, as discussed below, it is unnecessary to conclude whether the second element of the Complaint has been established.

**E.    Registered and Used in Bad Faith**

The Policy, paragraph 4(a)(iii), requires the Complainant to establish that "the Domain Name has been registered and is being used in bad faith". The requirement is conjunctive; this element of the complaint is not established without a showing of bad faith at the time of registration as well as subsequent use of the disputed domain name in bad faith. See, e.g., *Digital Vision, Ltd. v. Advanced Chemill Systems*, WIPO Case No. D2001-0827.

Even without direct evidence of original intent, a respondent's motivations at the time of registration can often be inferred from the respondent's later conduct. Thus, paragraph 4(b), which provides a non-exhaustive list of circumstances that indicate bad faith, includes the following:

"(iv)  by using the domain name, you have intentionally attempted to attract, for commercial gain, Internet users to your web site or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of your web site or location or of a product or service on your web site or location."

As discussed above in connection with the second element of the Complaint, the Respondent in the current proceeding has allowed the Domain Name to be used, at least recently, in a manner that takes advantage of the Complainant's trademark and misdirects Internet users to websites operated by unrelated and even competing parties. Moreover, the Respondent has presumably realized some share of pay-per-click advertising revenues from this use.  This conduct appears to fit the paradigm of paragraph 4(b)(iv).

But even if this conduct represents bad-faith *use* of the Domain Name, in this case the Panel is unable to infer bad-faith *registration* of the Domain Name. Mr. Cartmell, in his sworn Declaration, denies knowledge of the Complainant or its mark in 1996, and there is no remotely contemporaneous evidence in the record contradicting that assertion.  (While the Policy does not preclude delayed complaints per se, waiting for twelve years to raise an objection to a domain name certainly impacts the Complainant's ability to adduce evidence of bad faith at the time of registration.)

Mr. Cartmell and his company have no apparent history of cybersquatting, despite registering numerous domain names. The mark itself is based on a family name that also happens to be a dictionary word in English.  The Respondent's claim that it chose the Domain Name initially for its generic rather than trademark value is thus not inherently implausible.

Moreover, the record does not establish the fame of the Complainant's then-unregistered mark in 1996, particularly on the opposite coast of the United States of America.  According to the online business entity database operated by the New York State Division of Corporations, the Complainant first filed for incorporation in New York on March 1, 1996, roughly one month before the Respondent registered the Domain Name. The Complainant asserts that the unregistered KOOKS mark had been in use since 1962 but furnishes no evidence concerning such use or establishing that the mark was so well known that the Respondent must have been aware of it in 1996.  It does not appear from the record that the Complainant itself had established a website by that time;  the relevant WHOIS database shows that the domain name now used for the Complainant's website, "kookscustomheaders.com", was not created until more than seven years later, on October 19, 2003.  The Complainant currently has authorized dealers in Washington, but there is no evidence in the record as to dealerships, advertising, or sales under the KOOKS mark in Washington State in 1996.

The Complainant did not apply for trademark registration until October 2000, and the registration was granted in August, 2001, both long after the Domain Name was registered.  The registration shows first use of the mark in commerce in January 1962, but there is simply no evidence in the record that establishes the probability that the Respondent, a Washington company in an entirely different line of business, must have been aware of the Complainant's mark when it registered the Domain Name in 1996.

Thus, the Panel cannot conclude, based on the record in this proceeding, that the Respondent was likely aware of the Complainant's mark in 1996 and registered the Domain Name in a bad-faith effort to capitalize on that mark.  The Complainant has not

met its burden of persuasion on the third element of the Complaint.

7.   **Decision**

For all the foregoing reasons, the Complaint is denied.

_____
W. Scott Blackmer
Sole Panelist

Dated:  April 4, 2008

# EXHIBIT 8

## COVENANT NOT TO SUE

Kooks Custom Headers, Inc. ("Kooks Custom Headers") covenants not to sue Global DNS LLC ("Global DNS") concerning the content (shown in Exhibit A) previously posted to Global DNS's domain name <kooks.com>, but only to the extent of conduct preceding the date of this Covenant Not to Sue ("Covenant"). Kooks Custom Headers also covenants not to sue Global DNS based on the content (shown in Exhibit B) currently posted to the domain name <kooks.com>.

This Covenant in no way restricts Kooks Custom Headers' rights and/or remedies against Global DNS, legal and/or equitable, in the event that Global DNS re-introduces to <kooks.com> any of the content of Exhibit A, or engages in any other conduct which violates Kooks Custom Headers' rights, and all such rights and remedies are hereby expressly reserved.

KOOKS CUSTOM HEADERS, INC.

By: _George Kryssing Jr_

Name: _____

Title: _President_

Date: _8/1/08_

# EXHIBIT A

Get a <u>Telephone Report</u>



**Kooks.com**
*What you need, when you need it*

English 

Make this your homepage | Bookmark this page
February 13, 2008 | Inquire about this domain

| Kooks Headers | Christian Singles | The Kooks | Russian Brides | Ringtones | Free Music Downloads | Ring Tones |

### Left navigation

- Kooks Headers
- Christian Singles
- The Kooks
- Russian Brides
- Ringtones
- Free Music Downloads
- Ring Tones
- Kooks
- Free Music
- The Kooks Lyrics

## Popular Categories

- Kooks Headers
- The Kooks
- Free Music Downloads
- Free Music
- Brass Soap Dispenser
- Msnbc

- Christian Singles
- Ringtones
- Kooks
- Download Full Movie
- Cheap Mp3 Player
- X

- Russian Brides
- Ring Tones
- The Kooks Lyrics
- Houses For Sale
- Grape Jelly Meatball
- Employment

## Favorite Categories

**Travel**
- Airline tickets
- Hotels
- Car rental
- Flights
- South Beach Hotels

**Business**
- Employment
- Work from home
- Reorder Checks
- Used Cars
- Business Opportunities

**Finance**
- Free credit report
- Online Payment
- Credit Card Application
- Car Insurance
- Health Insurance

**Entertainment**
- Games
- Casino
- Music
- Cell Phones
- Ringtones

**Home**
- Foreclosures
- Houses For Sale
- Mortgage
- People Search
- Real Estate Training

**Lifestyle**
- Dating
- Christian Singles
- Jewish Singles
- Engagement Rings
- Chat

Search    Search

# EXHIBIT B

# DON'T FORGET TO BILL YOUR CLIENT!

## GLOBAL DNS LLC vs. KOOKS CUSTOM HEADERS, INC

## UPDATE: GLOBAL DNS WINS UDRP!

### STOP REVERSE DOMAIN HIJACKING BY MAKING IT EXPENSIVE!

# KOOKS.COM

1.   AN ECCENTRIC, STRANGE, OR FOOLISH PERSON.
2.   AN INSANE PERSON.

**QUESTIONS & ANSWERS** 

**Where can I find the latest information about the Federal Lawsuit and UDRP Action?**

See UDRP Docket and the Lawsuit Docket for the latest information.

**UPDATE:**

**Now that you've won the UDRP case, what is the status of the federal lawsuit you filed for cancellation of the Kooks Customs Headers Trademark?**

We are continuing with our move to cancel the Kooks Custom Headers trademark.

**But why continue with a lawsuit? What are your monetary damages in this instance?**

This case is not solely about monetary damages; instead, we are intent on showing that the trademark for Kooks Custom Headers is invalid, thereby rendering moot any further actions on their part to exploit the UDRP process as a cheap means of wresting coveted domain names away from their lawful domain holders. Once the people behind Kooks Custom Headers embarked upon the path of claiming trademark protection as a means for grabbing domain names, they opened their trademark to scrutiny. We are confident their trademark claims cannot withstand such scrutiny.

**How far will you go?**

We will proceed until all legal options have been exhausted.

**Would you settle this lawsuit?**

Of course. We are familiar with the expensive and uncertain nature of any legal proceeding, and we are not unreasonable people, but the terms of any settlement agreement will be public and not subject to confidentiality clauses.

http://www.kooks.com/                                                      07/15/2008

**What is Reverse Domain Hijacking?**
Reverse domain hijacking is the practice of unseating valid and legally registered domain name holders/registrants by accusing them of violating weak and/or non-existent trademarks related to the domain name. (see Wikipedia)

**Why did you register the KOOKS.COM domain, and didn't you agree to the UDRP?**
The domain was registered April 10th, 1996 to be used for a future internet venture. The ideas for this venture have changed over the years, but have included a Wiki type system of Kooks on the Internet (which the defendant of our lawsuit would fit nicely within) (see 1993 alt.usenet.kooks Post). Back in 1996, there was no such thing as UDRP, so we would have been hard pressed to agree to it.

**You're not doing anything with the KOOKS.COM domain -- it was just pointed to a parking page, so why not just give it to them?**
Over the years, we have developed many of our registered/purchased domains into real businesses. Some of these domains we had for over 10 years before landing on a plan for how to best utilize its name and traffic. We have had plans for Kooks.com from day one, and will eventually develop a website around the domain in the future. The domain is obviously valuable enough for Kooks Custom Headers to attempt to Hijack, but we're not the sort to just give away our valuable property willy-nilly.

**Why not agree to the outcome of ICANN UDRP Process?**
Trademark owners have used the procedure in certain cases to obtain ownership of domains they don't rightfully deserve, and the UDRP has a history of ruling in favor of the Trademark holder 80% of the time or more, no matter how weak or specious the trademark argument. (see UDRP Complaint)

**Can you really file a lawsuit to prevent your domain from being Hijacked?**
In the United States, the Anticybersquatting Consumer Protection Act (ACPA) 15 U.S.C. 15 U.S.C. § 1114(2)(D)(v) [15]permits the domain name holder the exclusive remedy to bring a civil action when their domain has been suspended, disabled, or transferred as a result of an ICANN proceeding, in order to establish that their use of the domain is not unlawful. The court is authorized under the statute to grant injunctive relief to the registrant, including reactivation or transfer of the domain to the registrant . . . so the answer is yes.

**Isn't a lawsuit far more expensive than the UDRP Process?**
Yes. UDRP complaints are cheap to file and easy to defend. As we previously stated, history shows that in 80% or more of the cases, the UDRP Arbitrator sides with the Trademark holder against the domain registrant, rightfully or not -- so if you can afford legal action to prevent your domain name from being Hijacked, it's the best course.

**Is this a Joke? You didn't really file a lawsuit, did you? People say they will file a lawsuit all the time, and then don't.**
You're right. A lot of people blow smoke when talking about attorneys and lawsuits, but we don't. You can download a copy of the legal action. (see Complaint)

**Have you been in Trademark related disputes before?**
Yes. Hormel filed an action to cancel the trademark of Spam Arrest, a related company. Hormel incorrectly assumed that they owned the word SPAM in all its permutations, yet after a four year battle, Hormel lost its trademark dispute while spending millions of dollars in legal proceedings. (see USPTO TTAB)

**Kooks Custom Headers claims you had a link for "Kooks Headers" listed on the parking page, and people were confused. Isn't that a bad thing to do?**
First, we had never heard of Kooks Custom Headers, and we had no knowledge of this link;



How to reduce Spam:

Hire Spam Ninjas

spamarrest
30-day FREE TRIAL!

second, no one from their company or legal team ever bothered to contact us to alert us that there might be confusion in order to allow us the opportunity to remedy the alleged situation; third, we would have blocked the terms "headers" and "custom headers" from appearing on the parking page had they simply asked; and finally, KOOKS is the plural form of the word KOOK, which is a generic, commonly used word in the English language that has nothing to do with mufflers or car parts. (see Dictionary)

**Kooks Custom Headers has a Trademark for KOOKS. Doesn't that entitle them to your domain?**
No, it doesn't. Yes, they have a US Trademark for KOOKS, but only in regards to automotive and motorcycle parts -- namely, exhaust headers and mufflers. Their trademark provides them certain protection in those areas only, much as Hormel's trademark provided them with protection when it came to canned or potted meat, but not an email spam blocking company. (see USPTO)

**You say the KOOKS trademark application by Kooks Custom Headers was fraudulent -- how is that?**

In their trademark application, they claim a "First Use" date of 1962 -- thirty two years before their company came into existence. Since Kooks Custom Headers was incorporated in 1996, and therefore did not exist prior to 1996, Kooks Custom Headers cannot assert trademark rights dating back to 1962; therefore, Global DNS has filed a lawsuit to cancel the Kooks Custom Headers Trademark as fraudulent.

**Kooks Custom Headers claims you registered eight hundred domains within the last few years, and that you've registered other trademarked domains, such as ICANN-BRIEF.ORG, ICANN-PAPERS.COM, ICANNBRIEF.COM, ICANNBRIEF.ORG, and ICANNNEWS.COM, all of which show demonstrable bad faith.**

Global DNS has not registered anything close to eight hundred domains in the last few years, nor do we own the trademarked ICANN domains they claim we own (Global DNS owns absolutely no ICANN domains, nor have we ever owned any ICANN domains). Kooks Custom Headers has again perpetrated a fraud (this would appear to be a pattern) by presenting "evidence" with no merit or backing in the hopes that their false information will prejudice the WIPO board against us, as ICANN is the body that created the UDRP Process and is a federally registered trademark of the same group.

**Kooks Custom Headers claims that since you filed a lawsuit the very same day you were served with the UDRP complaint, this would suggest that Glboal DNS has been down this path before and is hoping to coerce Kooks Custom Headers to negotiate a high purchase of KOOKS.COM domain. They also claim that you essentially admitted as much by saying that you want to make it "expensive" for them to try and take your domain away.**

Kooks Custom Headers has made many false statements -- either because of incompetent counsel or malicious intent, we have no way of knowing, but what we do know is that we have no interest in selling our domain to them, not now and not ever. The fact that we have quick and competent counsel that filed a lawsuit against Kooks on the same day that we were informed of Kooks' attempt to hijack our domain means only that we take this UDRP action seriously. We jealously guard our intellectual property, and absolutely refuse to make it cheap and easy for Kooks Custom Headers to hijack our domain. (see UDRP Complaint)

**Kooks Custom Headers recently won a UDRP claim for the domain KOOKSHEADERS.COM. Doesn't that give them a clear entitlement to the KOOKS.COM domain?**

No. While we agree that there is a likelihood of confusion in regards to KOOKSHEADERS.COM

and the business of Kooks Custom Headers, the generic word "kooks" causes no confusion whatsoever, and Kooks Custom Headers is not entitled to our domain simply because they find it a desirable Internet property.

### Who are you, and why are you so passionate about Intellectual Property?

The Managing Director of Global DNS is Brian Cartmell, who has had years of experience with Trademark holders who assert that they have specific rights where they most certainly do not. He and his companies have spent millions of dollars successfully defending themselves against unjustified lawsuits. We believe this is unfair and unwarranted. GlobalDNS wants other Domain Holders who rightfully own their domains to know that they can fight domain hijackers, and win!

### What do you want the final outcome of this legal action to be?

First, we would like to see their UDRP complaint purged, as we have done nothing wrong by owning the Kooks.com domain and we are in no mood for a UDRP complaint record that might suggest otherwise; secondly, we would like to see them pay for the legal costs accrued as a result of our being forced to deal with this underhanded action; and finally, we would like a formal apology from George Kryssing Sr. who brought forward this UDRP complaint in an effort to hijack a valuable domain name that is not rightfully his. The Kooks.com domain is legally and rightfully ours -- we have been in possession of this domain since well before Mr. Kryssing even registered his own trademark; and the word "kooks" itself, in all its crazy glory, is not any one person's or one company's intellectual property. We intend to keep it that way.

[ SHARE ... ]

### Subscribe to our Newsletter for Updates on the Lawsuit

EMAIL ADDRESS

[ Subscribe ]

Powered By - Zookoda

### ©2008 GLOBAL DNS LLC



# Contact Info

Our staff is ready to assist you, provide you with a proposal, or answer any questions you have 24 hours a day, 7 days a week. Please feel free to contact us at one of our branches listed below, or click the following link to send us an inquiry:

### Contact Form

### Seattle

Phone: 206.521.8717
Fax: 206.521.8730
Email: sea@alcweb.com
1001 4th Ave, Suite 2110
Seattle, WA 98154

### San Francisco

Phone: 415.777.4449
Fax: 415.777.4474

**Related Topics:**  Employment    People/Culture

Employment                                    Contact Us

All content, logos and designs on this page copyright 2008, ALC Legal Technologies